UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

RON ROGERS,
Plaintiff,
v.
MCDONALD'S USA, LLC,
Defendant.

Case No. 25-cv-05227-LB

**DISCOVERY ORDER**

Re: ECF No. 65

## INTRODUCTION

The plaintiff sued his former employer, McDonald's, for disability discrimination, retaliation, and related claims under California law arising from two medical leaves (he returned to work in September 2023 and February 2025), his 2024 performance ratings, the handling of his 2024 application to become a McDonald's franchisee, and the elimination of his position in 2025.[1] Fact discovery closed on September 10, 2026. The plaintiff has taken eight depositions, and the parties agree that the last two of his ten may proceed after the cutoff. He now asks for leave to take seven more: four colleagues who gave him favorable feedback in 2024 (Eric Moore, Peter Ou, Dino Sammakieh, and Roger Delph), a franchising employee (Roya Pourvakil), the President of

[1] Second Am. Compl. – ECF No. 54. Citations refer to the Electronic Case File (ECF). Pinpoint citations are to the ECF-generated page numbers at the top of documents.

McDonald's USA (Skye Anderson), and a second Rule 30(b)(6) deposition of McDonald's about its franchise process.[2]

The court denies the request. The plaintiff identified all six individuals in his initial disclosures a year before the discovery cutoff, chose his ten depositions with that knowledge (they include a Rule 30(b)(6) deposition of McDonald's and the deposition of its former senior director of franchising), and asked for more only after fact discovery closed, without explaining the delay. He also has not made the particularized showing of need that Rule 30(a)(2)(A) requires for any of the seven.

**STATEMENT**

The plaintiff was injured at work in March 2023 and took medical leave.[3] He returned in September 2023, received a "3 – Significant" performance rating in February 2024, applied to McDonald's Owner/Operator franchise program in May 2024, and received an "Off Track" midyear assessment on July 29, 2024.[4] He cites July 2024 internal communications in which HR urged that management tell him it did not support his franchise application, Elizabeth Campbell questioned whether his performance in his marketing role should govern his ability to apply, and a message reported that Franchising had been asked to "take a pause."[5] He challenged the assessment on August 19, 2024, with colleagues' feedback and his results on the "Rise & Dominate" initiative. According to the plaintiff, McDonald's rejected his franchise application the next day without identifying a failed qualification, declined in December 2024 to revise the rating (citing stakeholder feedback), and told him in March 2025 that he was ineligible for a franchise. It eliminated his position in May 2025.[6] McDonald's contends that he never submitted a complete

[2] Disc. Letter Br. – ECF No. 65 at 1–3. The parties consented to magistrate-judge jurisdiction. Consents – ECF Nos. 12, 23. The court can decide the dispute without a hearing. Civil L.R. 7-1(b).

[3] Disc. Letter Br. – ECF No. 65 at 1.

[4] *Id.* at 1–2.

[5] *Id.* (citing MDUSA001068–69, MDUSA001305, and ROGERS_000136).

[6] *Id.* at 2 (citing ROGERS_000344–45, MDUSA001027–28, MDUSA000211, and MDUSA000064); *id.* at 4 (position eliminated in May 2025).

franchise application (it lacked a recommendation letter), was never interviewed or considered for the program, and in any event suffered no adverse employment action from the franchise process.[7]

The case began in May 2025.[8] The plaintiff's September 9, 2025 initial disclosures identified all six individuals he now seeks to depose.[9] McDonald's September 5, 2025 disclosures identified Brian deKowzan (the plaintiff's manager), Ms. Campbell, Alma Anguiano, Courtney Cusimano Adams, Lori Cramer, and Sandra Edwards on the leave, placement, rating, and separation issues, and Ms. Anderson as a former manager. They identified no one from the franchising team.[10] The plaintiff served 25 interrogatories and 146 document requests and noticed ten depositions, including a Rule 30(b)(6) deposition of McDonald's.[11] He has taken eight, including his supervisors and the HR representatives for the relevant period (Mr. deKowzan, for seven hours over two sessions, Ms. Campbell, Ms. Anguiano, Ms. Cramer, and Ms. Adams) and Dan Camp, McDonald's former senior director of U.S. franchising.[12] Fact discovery closed on September 10, 2026. The parties agreed that the two remaining depositions (one is of Rosalind Ledesma) may proceed after the cutoff.[13] They filed the joint letter on October 16, 2026.[14]

## ANALYSIS

A party needs leave to take more than ten depositions, and the court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." Fed. R. Civ. P. 30(a)(2)(A)(i). Rule 26(b)(2)(C) in turn requires the court to limit discovery that is "unreasonably cumulative or duplicative," that the requesting party "has had ample opportunity to obtain," or that is disproportionate to the needs of

---

[7] *Id.* at 4–5.

[8] *Id.* at 3.

[9] *Id.*

[10] *Id.* at 1–2 (citing McDonald's initial disclosures at 2–6, which are not in the record).

[11] *Id.* at 3 & n.1.

[12] *Id.* at 3 n.2, 4; deKowzan Dep. Vol. II, Ex. 1 to Curry Decl. – ECF No. 65-2; Camp Dep., Ex. 3 to Curry Decl. – ECF No. 65-4. McDonald's also cites the deposition of a witness named Valenzuela. Disc. Letter Br. – ECF No. 65 at 4 (citing Valenzuela Dep., Ex. 2 to Curry Decl. – ECF No. 65-3).

[13] Disc. Letter Br. – ECF No. 65 at 3.

[14] *Id.*

United States District Court
Northern District of California

the case under Rule 26(b)(1). The ten-deposition limit exists "to assure judicial review under the standards stated in Rule 26(b)(2) before any side will be allowed to take more than ten depositions" and to emphasize counsel's obligation to plan discovery cost-effectively. Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment. The party seeking more depositions must make a particularized showing of need for each one. *Thykkuttathil v. Keese*, 294 F.R.D. 597, 600 (W.D. Wash. 2013); *Authentec, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008). And because fact discovery has closed, the plaintiff must also show good cause to modify the schedule, a standard that "primarily considers the diligence of the party seeking the amendment." Fed. R. Civ. P. 16(b)(4); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

**1. The Plaintiff Had Ample Opportunity to Take the Discovery**

Fact discovery closed on September 10, 2026, and the plaintiff asked for leave five weeks later without saying why he did not ask sooner. He identified all six individuals in his September 2025 initial disclosures, a year before the cutoff. He deposed McDonald's former senior director of franchising, his ten depositions include a Rule 30(b)(6) deposition of McDonald's, and nothing in the letter suggests that any proposed deponent's significance emerged late in discovery. He chose his ten with that information in hand. Rule 26(b)(2)(C)(ii) makes a party's ample opportunity to obtain the discovery a mandatory ground for limiting it, and a request to take depositions after the cutoff requires a showing of diligence that the plaintiff has made. Fed. R. Civ. P. 16(b)(4); *Johnson*, 975 F.2d at 609.

**2. The Plaintiff Has Not Shown a Particularized Need for the Depositions**

The request also fails on its merits, witness by witness.

**2.1 The Four Colleagues**

Mr. Moore, Mr. Ou, Mr. Sammakieh, and Mr. Delph worked with the plaintiff on Rise & Dominate and gave him favorable written feedback in 2024.[15] That feedback is in the record as an exhibit to Mr. deKowzan's deposition, none of the four was a decisionmaker, and the plaintiff examined Mr. deKowzan for seven hours about his rating and what he considered.[16] The parties dispute whether the feedback was a formal 360-degree review or praise the plaintiff solicited after he received the "Off Track" rating, but the dispute does not matter here.[17] Either way, the documents show what the four said, and the pretext question is whether McDonald's honestly believed its stated reasons, not whether the plaintiff's colleagues assessed his work more favorably than his manager did. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). The plaintiff says McDonald's invoked "stakeholder feedback" when it refused to revise the rating in December 2024, but which stakeholders McDonald's consulted, and what they said, are questions for McDonald's witnesses, whom he has deposed.[18] Four depositions to confirm the content of written feedback are unreasonably cumulative and disproportionate in a single-plaintiff employment case. Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i); *see Atkinson v. Goord*, No. 01 CIV. 0761 LAKHBP, 2009 WL 890682, at *3 (S.D.N.Y. Apr. 2, 2009) (a party is not entitled to depose every witness to a relevant event).

**2.2 The Franchising Discovery: Ms. Pourvakil and the Second Rule 30(b)(6) Deposition**

McDonald's leads with the argument that the franchise process is irrelevant because the plaintiff never completed an application and because declining to make an employee a franchisee is not an adverse employment action.[19] The July 2024 communications the plaintiff cites tie HR's and Ms. Campbell's views of his performance to the franchising "pause" three weeks before his

[15] *Id.* at 2 (citing deKowzan Dep. Ex. 8 at 2–10).

[16] *Id.* at 2, 4.

[17] *Id.* at 2, 4 (citing deKowzan Dep. Vol. II at 254:14–255:5, Ex. 1 to Curry Decl. – ECF No. 65-2).

[18] *Id.* at 2 (citing MDUSA000211).

[19] *Id.* at 4–5.

United States District Court
Northern District of California

"Off Track" assessment, which makes the episode relevant to motive on the pleaded claims whether or not it is independently actionable.[20]

But relevance is not need. The plaintiff deposed Mr. Camp, McDonald's former senior director of U.S. franchising, and he does not say what Mr. Camp could not answer about the pause, the franchise criteria, or the August 20 rejection, or why his Rule 30(b)(6) notice did not cover those topics.[21] He describes Ms. Pourvakil only by topic ("firsthand franchise-application communications and processing") and does not dispute Mr. Camp's testimony that she was not on the sourcing team and had no role in reviewing applications.[22] McDonald's has produced its documents on the franchise criteria and process.[23] A list of topics is not a particularized showing, and a second corporate deposition on subjects the plaintiff could have noticed the first time is discovery he had ample opportunity to take.[24] Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii).

### 2.3 Ms. Anderson

Ms. Anderson is the President of McDonald's USA, reports to its CEO, and supervised the plaintiff before 2019.[25] The plaintiff does not dispute that she is an apex executive, so he must show that she has unique, first-hand, non-repetitive knowledge of the facts at issue and that he has

---

[20] *Id.* at 1–2.

[21] *Id.* at 2–5.

[22] *Id.* at 2, 4 (citing Camp Dep. at 72:23–73:5, Ex. 3 to Curry Decl. – ECF No. 65-4).

[23] *Id.* at 5.

[24] The July 2024 communications are the most probative evidence the plaintiff identifies, and who directed Franchising to "pause" his application, and why, is knowledge that belongs to McDonald's as an entity. Mr. Camp's recollection as a former employee does not bind McDonald's the way Rule 30(b)(6) testimony does. The court considered granting leave for a three-hour Rule 30(b)(6) deposition of McDonald's limited to two topics: (1) who decided to pause the plaintiff's 2024 franchise application, when, and why, including communications between Franchising and the plaintiff's management or HR about the application; and (2) the criteria McDonald's applied in 2024 to employee Owner/Operator applicants, including the manager-band qualification and performance standard, and how it applied them to the plaintiff. Given that McDonald's produced its documents on the franchise criteria and process, and the plaintiff's lack of a particularized showing, the court ultimately denied the additional deposition.

[25] *Id.* at 2, 5 (citing Rogers Dep. at 126:23–24, Ex. 4 to Curry Decl. – ECF No. 65-5). The plaintiff, citing McDonald's initial disclosures, gives her title as "President, Global Business Service"; McDonald's describes her as the President of McDonald's USA. *Id.* at 2. The difference does not matter: the plaintiff does not dispute her apex status and offers a written deposition to address McDonald's "senior-executive concerns." *Id.*

exhausted less intrusive means. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). He shows neither. Her supervision predates the pleaded events by years, and McDonald's listed her in its initial disclosures only in that capacity, a limitation the plaintiff acknowledges.[26] His only link between Ms. Anderson and the 2024 franchise application is counsel's statement that he "understands" that she served on a franchise-review panel during the application period; McDonald's counsel says that is false and that no panel reviewed the plaintiff's incomplete application.[27] Counsel's understanding is not a showing of knowledge, and the plaintiff does not say that he tried to test it by less intrusive means (such as an interrogatory or a question to Mr. Camp) before seeking the deposition of a company president. His offer to proceed "initially" by written deposition does not help: a written deposition counts against the ten-deposition limit, Fed. R. Civ. P. 31(a)(2)(A)(i), and he proposes 68 questions.[28]

## CONCLUSION

The court denies the plaintiff's request for leave to take seven additional depositions. This resolves ECF No. 65.

**IT IS SO ORDERED.**

Dated: October 19, 2026

LAUREL BEELER
United States Magistrate Judge

[26] *Id.* at 2, 5.
[27] *Id.*
[28] *Id.*